**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
LORI D. FELICE,

                     Plaintiff,           **MEMORANDUM OF**
                                    **DECISION & ORDER**
          -against-                 2:18-cv-00603 (ADS)

ANDREW M. SAUL,

                    Defendant.
---------------------------------------------------------X

<u>**APPEARANCES:**</u>

**Goldsmith & Tortora**
2067 Jericho Turnpike
Commack, NY 11725
      By:    Craig Joseph Tortora, Esq., Of Counsel.

**United States Attorney's Office**
*Attorneys for the Defendant*
271 Cadman Plaza East
Brooklyn, NY 11201
      By:    Candace Scott Appleton, Assistant United States Attorney.

**SPATT, District Judge**:

On January 29, 2018, plaintiff Lori D. Felice (the "Plaintiff" or "Felice") commenced this appeal pursuant to the Social Security Act, 42 U.S.C. § 405 *et seq.* (the "Act"), challenging a final determination by Andrew M. Saul, the Acting Commissioner of the Social Security Administration (the "Defendant" or the "Commissioner"), that she was ineligible to receive disability insurance benefits.

The Court notes that the Plaintiff originally named Nancy A. Berryhill as the Defendant in this action, but by operation of law, the present Acting Commissioner, Andrew M. Saul is "automatically substituted as a party." FED. R. CIV. P. 25(d); *see also* 45 U.S.C. §405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in

the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

Presently before the Court are the parties' cross motions, pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(c) for a judgment on the pleadings. For the reasons that follow, the Court denies the Plaintiff's motion and grants the Defendant's motion.

## I. BACKGROUND

The Plaintiff is a 58 year-old woman with a GED high school diploma. From 2005 to October 2013, she worked at a restoration cleaning business in human resources, doing administrative work such as filing, typing, data entry, and payroll/benefits administration.

On March 17, 2014, the Plaintiff filed a claim for disability insurance benefits, claiming she has been disabled since October 10, 2013, due to back, hip, pelvis, right shoulder, and elbow conditions; psoriasis; and carpal tunnel syndrome ("CTS"). The Commissioner denied the Plaintiff's application, and the Plaintiff requested a hearing before an administrative law judge.

On August 30, 2016, the Plaintiff appeared with counsel and testified at a hearing before Administrative Law Judge Andrew Weiss (the "ALJ").

On September 27, 2016, the ALJ issued a decision, finding the Plaintiff was not disabled under the Act. The Plaintiff requested review of the ALJ's decision, which was denied by the Appeals Council on December 5, 2017, making the ALJ's decision the final decision of the Commissioner.

On January 29, 2018, the Plaintiff filed the instant action. The parties submitted this matter to the Court fully briefed on December 10, 2018.

For purposes of these motions, familiarity with the underlying administrative record is presumed. The Court's discussion of the evidence will be limited to the specific challenges and

responses presently raised by the Plaintiff and the Defendant. In this regard, references to the record are denoted as "R."

## II. DISCUSSION

### A. THE STANDARD FOR BENEFITS UNDER THE ACT.

The Act defines the term "disability" to mean an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person may only be disabled if his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

In determining whether a person is disabled, the Commissioner is required to apply the five-step sequential process promulgated by the Social Security Administration, set forth in 20 C.F.R. § 404.1520. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999). The Plaintiff bears the burden of proving the first four steps, but then the burden shifts to the Commissioner at the fifth step to prove that the Plaintiff is capable of working. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009); *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008); *Rosa*, 168 F.3d at 77; *see also Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) ("If the claimant satisfies her burden of proving the requirements in the first four steps, the burden then shifts to the [Commissioner] to prove in the fifth step that the claimant is capable of working."). "If at any step a finding of disability or nondisability can be made, the [Social Security Administration] will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24, 124 S. Ct. 376, 379, 157 L.Ed. 2d 333 (2003).

Under the five-step sequential evaluation process, the decision-maker decides:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); 20 C.F.R. §§ 404.1520, 416.920. When conducting this analysis, the ALJ must consider the objective medical facts; the diagnoses or medical opinions based on these facts; the subjective evidence of pain and disability; as well as the plaintiff's age, background, education and work experience. *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam).

## B. THE STANDARD OF REVIEW.

"Judicial review of the denial of disability benefits is narrow" and "[t]he Court will set aside the Commissioner's conclusions only if they are not supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Koffsky v. Apfel*, 26 F. Supp. 2d 475, 478 (E.D.N.Y. 1998) (Spatt, J.) (citing *Bubnis v. Apfel*, 150 F.3d 177, 179–81 (2d Cir. 1998)); *accord Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); 42 U.S.C. § 504(g); *see also Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."). The ALJ is required to set forth those crucial factors used to justify his or her findings with sufficient particularity to allow the district court to make a determination regarding the existence of substantial evidence. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

Accordingly, "the reviewing court does not decide the case de novo." *Pereira v. Astrue*, 279 F.R.D. 201, 205 (E.D.N.Y. 2010) (citing *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)). Rather, "the findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive," *id.* (citing 42 U.S.C. § 405(g)), and therefore, the relevant question is not "whether there is substantial evidence supporting the [plaintiff's] view"; instead, the Court "must decide whether substantial evidence supports *the ALJ's decision*." *Bonet v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (emphasis in original). In this way, the "substantial evidence" standard is "very deferential" to the Commissioner, and allows courts to reject the ALJ's findings "'only if a reasonable factfinder would have to conclude otherwise.'" *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994) (emphasis in original)). This deferential standard applies not only to factual determinations, but also to "inferences and conclusions drawn from such facts." *Pena v. Barnhart*, No. 01-cv-502, 2002 WL 31487903, at *7 (S.D.N.Y. Oct. 29, 2002) (*citing Levine v. Gardner*, 360 F.2d 727, 730 (2d Cir. 1966)).

"Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Burgess v. Astrue*, 537 F.3d 117, 127–28 (2d Cir. 2008) (quoting *Halloran*, 362 F.3d at 31); *accord Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed. 2d 842 (1971); *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S. Ct. 456, 464, 95 L.Ed. 456 (1951)).

An ALJ's findings may properly rest on substantial evidence even where he or she fails to "recite every piece of evidence that contributed to the decision, so long as the record 'permits [the Court] to glean the rationale of an ALJ's decision.'" *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (per curiam) (quoting *Mongeur*, 722 F.2d at 1040). This remains true "even if contrary evidence exists." *Mackey v. Barnhart*, 306 F. Supp. 2d 337, 340 (E.D.N.Y. 2004) (*citing DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998)).

The Court is prohibited from substituting its own judgment for that of the Commissioner, even if it might understandably have reached a different result upon a de novo review. *See Koffsky*, 26 F. Supp. at 478 (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)); *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## C. APPLICATION TO THE FACTS OF THIS CASE.

The Plaintiff alleged disability due to back, hip, pelvis, right shoulder, and elbow conditions; psoriasis; and CTS. The ALJ applied the Commissioner's five-step sequential evaluation process and determined that the Plaintiff was not disabled. At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since October 10, 2013. At step two, the ALJ found that the Plaintiff had the following severe impairments: adhesive capsulitis at the right shoulder, post-surgery; psoriatic arthritis; lumbago; and bilateral hip tendinitis. Her sleep apnea, CTS, and hypothyroidism were non-severe. At step three, the ALJ found that the Plaintiff's impairments, neither singly nor in combination, met or medically equaled the criteria of an impairment in the Listings. The ALJ then determined the Plaintiff's residual functional capacity ("RFC"), finding she could perform less than a full range of light work. She could lift and/or carry up to ten pounds frequently and up to twenty pounds occasionally. She could sit for six hours and stand and walk for up to two hours. She could frequently climb, balance, stoop, kneel, crouch,

crawl, push, or pull, and frequently reach with her right arm. She should avoid exposure to hazardous machinery and unprotected heights, and could have only occasional exposure to vibrations. At step four, the ALJ found that the Plaintiff lacked a disability as defined in the Act, because she retained the RFC to perform her past relevant work as a human resources clerk.

In this appeal, the Plaintiff objects to the RFC fashioned by the ALJ and, correspondingly, his determination that she could perform her past work as a human resources clerk. The regulations define RFC as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404 Subpt. P App. 2, § 200.00(c); *see also* 20 C.F.R. § 404.1545(a); 20 C.F.R. § 416.967; *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (defining RFC as the "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis" (quoting SSR 96–8p)). This determination requires consideration of "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting 20 C.F.R. § 404.1545(a)). It takes into account "all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and Plaintiff's subjective evidence of symptoms." *Stanton v. Astrue*, No. 07-cv-0803, 2009 WL 1940539, at *9 (N.D.N.Y. July 6, 2009) (citing 20 C.F.R. § 404.1545). Under the fourth step of the sequential evaluation process, the ALJ reviews the RFC and compares it to the demands of a claimant's past relevant work. *See* 20 C.F.R. § 404.1520(f). If the claimant is still able to perform the type of activities required by her past employment, she is deemed not to be disabled. *See* 20 C.F.R. § 404.1520(e).

According to the Plaintiff, the ALJ erred by: (1) fashioning an internally inconsistent and ambiguous RFC; (2) failing to properly weigh the medical opinions in the record; (3) mischaracterizing her testimony; and (4) improperly relying on her activities of daily living. For the following reasons, the Court finds that each of the Plaintiff's objections are without merit.

**1.  As to the RFC Fashioned by the ALJ.**

The Plaintiff objects that that the RFC articulated by the ALJ is ambiguous and not supported by substantial evidence. In particular, she takes issue with the ALJ's determination that she "is able to reach frequently with the right arm but has no other manipulative limitations." In the Plaintiff's view, the statement is internally inconsistent because the phrase "no other manipulative limitations" implies that the Plaintiff in fact has some sort of limitation, which the RFC fails to identify. Moreover, she claims it contradicts the opinions of "all" treating sources and medical experts that she is unable to reach with the right hand. The Court disagrees with the Plaintiff's characterization of the statement, and finds it to be consistent with the medical evidence in the record.

The Plaintiff is incorrect that the ALJ offered no limitations as to her ability to reach. The ALJ found that she could perform less than a full range of light work and could only reach with the right arm "frequently." Frequent is a term of art defined in the Social Security Regulations as "occurring from one-third to two-thirds of the time." SSR 83-10. Therefore, contrary to the Plaintiff's description, the ALJ clearly provided for a limitation, so that the subsequent use of the phrase "no other manipulative limitations" was appropriate.

In addition, the assessment that the Plaintiff could lift only frequently is supported by substantial evidence. Dr. Golub, whose testimony the ALJ appropriately gave great weight, reviewed the entire record, listened to the testimony, and found that was the appropriate description

of the functionality of her right arm. R. at 29, 51. The Plaintiff also only testified that she could not lift or reach above her head or below her knees, which does not rule out other forms of reaching. *Id.* at 210–11. Based on the testimony of the vocational expert, it does not appear that her past job as a human resources clerk would require reaching outside the scope of her present functional capabilities. *Id.* at 51.

As to the remainder of the Plaintiff's RFC, the Court finds that it is also supported by substantial evidence. In addition to the medical opinions, which the Court will discuss in the following section, *see infra* II.C.2, the ALJ based the Plaintiff's RFC on a review of a variety of objective and subjective evidence. The ALJ considered the Plaintiff's statements and testimony, R. at 24, as well as clinical evidence, such as the treatment records from her physicians and diagnostic testing results. *Id.* at 390 (back from May 2011), 240–41 (right shoulder from April 2013), 565–66 (left hip from June 2014). For example, the ALJ noted that after the Plaintiff's right shoulder surgery, her orthopedist's PA stated that she was "doing excellently postoperatively." *Id.* at 24, 491. Moreover, despite lower back pain, there was no evidence that the Plaintiff had difficulty walking, and an MRI scan around that time noted no substantial impairment in her hip/lower back. *Id.* at 25, 244–48, 295, 565–66. Further, the injury causing back pain occurred in 2006, and the Plaintiff continued working after that for seven more years. *Id.* at 41, 375. Her right shoulder injury occurred in January 2013, and she worked up until her surgery in October 2013. *See id.* at 41.

Therefore, the Court finds the ALJ did not err in fashioning the Plaintiff's RFC.

## 2. As to the ALJ's Weighing of Medical Opinions.

In fashioning the claimant's RFC, the treating physician rule requires the ALJ to give the opinion of a claimant's treating physician as to the nature and severity of the claimant's

impairments "'controlling weight,'" so long as it is "'well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2)); *Bonneau v. Astrue*, No. 13-cv-26, 2014 WL 31301, at *5 (D. Vt. Jan. 3, 2014) (same). Although the Court is generally required to defer to the medical opinion of a treating physician, *see Schisler v. Sullivan*, 3 F.3d 563, 567–68 (2d Cir. 1993), those findings may not be accorded controlling weight if they are inconsistent with other substantial evidence, including the opinions of other medical experts. *Burgess*, 537 F.3d at 128.

The ALJ must consider the following factors if it decides to afford less than controlling weight to a treating physician's opinion: "(1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); *Halloran*, 362 F.3d at 32 (same); 20 C.F.R. § 404.1527(c)(2). The ALJ further must explain the weight assigned to the opinion of a treating physician. Failure to provide "good reasons" for not assigning the proper weight of a treating physician is grounds for remand. *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015); *see also Halloran*, 362 F.3d at 32 ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.").

In order for the Court to determine whether a treating physician's opinion is consistent with other substantial evidence in the administrative record, the Court must keep in mind that "genuine conflicts in the medical evidence are for the ALJ to resolve." *Gunter v. Comm'r of Soc. Sec.*, 361

F. App'x 197, 199 (2d Cir. 2010) (quoting *Burgess*, 537 F.3d at 128); *see also Garcia v. Barnhart*, No. 01-cv-8300, 2003 WL 68040, at *7 (S.D.N.Y. Jan. 7, 2003) (holding that the ALJ cannot substitute his or her "own assessment of the relative merits of the objective evidence and subjective complaints for that of a treating physician").

Here, the Plaintiff objects to the weight afforded to the opinions of the following medical sources: (1) treating source Philip L. Schrank, M.D. ("Dr. Schrank"); (2) treating source Ralph Mangels, D.C. ("Dr. Mangels"); (3) consultative examiner Andrea Pollack, D.O. ("Dr. Pollack"); and (4) medical expert Stephen Golub, M.D. ("Dr. Golub"). The Court will discuss each medical opinion in turn.

### a. As to Dr. Schrank.

Dr. Schrank is an orthopedic surgeon who saw the Plaintiff for post-operative visits. In Dr. Schrank's treatment notes from November 13, 2013 and March 5, 2014, he opined in the context of her Workers' Compensation claim, that the Plaintiff was "totally temporarily disabled from all work related duties." He reiterated this opinion in an August 6, 2014 treatment note. The ALJ afforded "some weight" to the first two opinions, due to the treating relationship between the Plaintiff and Dr. Schrank, but found that they had limited probative value in determining the Plaintiff's RFC because the supposition offered did not set forth any specific vocational limitations. As to the third opinion, the ALJ assigned it "limited weight," because Dr. Schrank's assessment of total disability contradicted the range of functioning exhibited by the Plaintiff in examinations.

The Plaintiff argues that the ALJ improperly discounted the weight assigned to Dr. Schrank's testimony solely for "attempt[ing] to reach a conclusion on an issue reserved to the commission." ECF 7 at 9. The Plaintiff bases her argument on a mischaracterization of the ALJ's

findings. Primarily, the ALJ found that Dr. Schrank's testimony consisted of conclusory statements that provided no guidance as to the Plaintiff's functional limitations. It was made in the context of a Workers' Compensation hearing, and, of importance, contradicted the record as a whole. To the extent that the ALJ assigned less weight because it attempted to reach a conclusion on an issue reserved to the Commission, it was simply to correctly note that, while the ALJ must consider medical opinions, the ALJ must assess an RFC based on the record as a whole, not just the opinions of medical sources. *See* 20 C.F.R. § 404.1527(d)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner.").

The assessment that the Plaintiff was "totally temporarily disabled from all work related duties" does not sufficiently elucidate the Plaintiff's functional capabilities or limitations. For instance, it provides the ALJ with no guidance as to how much weight the Plaintiff can lift, for how long she can sit, or how well she can bend, stoop, or crouch. Moreover, the standard for establishing a disability in Workers' Compensation hearing materially differs from the definition of a disability under the Act. As a result, Dr. Schrank's vague and conclusory opinion was not entitled to great weight. *See DiCarlo v. Colvin*, 15-cv-0258, 2016 WL 4734633, at *15–16 (E.D.N.Y 2016) (Spatt, J.) (recognizing that "an opinion of disability rendered for purposes of Workers' Compensation is not binding under the Social Security Act," and finding that the ALJ correctly declined to give any special significance to a pronouncement that the Plaintiff was "fully disabled" for Worker's compensation purposes); *Talip v. Colvin*, 12-cv-5238, 2014 WL 4628707, at *11 (E.D.N.Y. Sept. 12, 2014) (same); *Harris v. Colvin*, 13-cv-1046, 2014 WL 4417313, at *12 (E.D.N.Y. Sept. 5, 2014) (same); *McEachin v. Astrue*, 08-cv 0013, 2010 WL 626820, at *10 (E.D.N.Y. February 23, 2010).

Moreover, Dr. Schrank's own findings were inconsistent with an opinion of total disability. Dr. Schrank noted that the Plaintiff was "doing well post-operatively" R. at 480, and that her shoulder was "well healed." *Id.* at 481. There was full, pain free, and stable range of motion in her left upper extremity, and only minimally restricted range of motion in her neck. *Id.* at 444–45, 515. While the Plaintiff had reduced range of motion in her right shoulder, she also had no swelling, redness, masses or deformity. *Id.* at 445, 481, 516. She had overall stability and full to almost full motor strength in her right shoulder, and her neurological examination was entirely unremarkable. *Id.* at 445, 481, 516. Moreover, the Plaintiff had a normal gait. *Id.* at 481, 515. An ALJ may afford substantially less weight to a treating source's opinion that is inconsistent with his own examination findings. *See Woodmancy v. Colvin*, 577 F. App'x 72, 75 (2d Cir. 2014) ("[T]he ALJ acted within her discretion in according the Buchan/Nemitz opinions little weight because record evidence of unremarkable clinical findings contradicted or failed to support the limitations conclusions in these opinions."); *Legg v. Colvin*, 574 F. App'x 48, 49 (2d Cir. 2014) ("The ALJ appropriately noted that . . . Dr. Bonavita's own treatment notes did not support the diagnoses and serious functional limitations contained in his statements."); *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) ("Because Dr. Gupta's medical source statement conflicted with his own treatment notes, the ALJ was not required to afford his opinion controlling weight.").

In addition, the overall record fails to support Dr. Schrank's opinion. Indeed, treatment notes from numerous other treating doctors show that the Plaintiff had normal strength in her lower extremities, R. at 233, 260–62, 266, 286, 522, 542, 616; negative straight leg raising *id.* at 233, 273, 616, 635, 640; normal gait, *id.* at 435, 450, 515, 522, 534, 611, 641; full or only minimally restricted range of motion in her head and neck, *id.* at 450, 528, 576, 584, 590, 596, 601, 606, 629; and stable and either full or almost full strength and tone in her upper right extremity, *id.* at 233,

429, 435, 445, 450, 516, 528, 576, 591, 596, 602, 606, 616, 629. Findings in the left shoulder were consistently normal. *Id.* at 233, 521, 528, 533, 576, 581, 590, 596, 606, 611, 616. An ALJ need only give a treating opinion controlling weight if it is consistent with the overall evidence. *Halloran*, 362 F.3d at 32 ("[T]he opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts").

Therefore, the Court finds that the ALJ assigned the appropriate weight to the opinion of Dr. Schrank.

### b. As to Dr. Mangels.

Dr. Mangels, the Plaintiff's chiropractor, prepared a report for the Plaintiff's Workers' Compensation claim for her low back and hip pain. Dr. Mangels stated that the Plaintiff was not working due to right shoulder surgery, but "[w]ith respect to the patient's lower back diagnosis she is occupational employable and advised to refrain from heavy lifting bending and/or stooping." He further assessed that the Plaintiff had a 50% temporary impairment. The ALJ afforded these opinions "little weight" because (1) chiropractors are not generally acceptable medical sources and (2) the opinions were vague and inconsistent with the overall medical record. The Plaintiff disagrees on both counts. The Court concurs with the ALJ.

First, the Plaintiff argues that, even if chiropractors are not medical sources, Dr. Mangels's opinion was not worthless, because 20 CFR § 404.1513(d)(1) instructs ALJs to consider opinions from sources other than medical sources, such as chiropractors. However, the Court notes that the ALJ never described Dr. Mangels's opinion as worthless. Rather, the ALJ correctly noted that he was not an acceptable medical source and proceeded to point out the other limitations of his opinion. R. at 26; *accord Diaz v. Shalala*, 59 F.3d 307, 313–14 (2d Cir. 1995) ("Because the

regulations do not classify chiropractors as either physicians or 'other acceptable medical sources,' chiropractors cannot provide *medical* opinions. . . . [T]he ALJ has the discretion to determine the appropriate weight to accord the chiropractor's opinion based on all the evidence before him.").

Second, the Plaintiff argues that Dr. Mangels's opinion was sufficiently definite because it opined that "her lower back impairment restricted her to work that did not involve heavy lifting, bending or stooping." The Plaintiff fails to address the actual problems with his testimony identified by the ALJ. The ALJ noted that Dr. Mangels initially attributed the Plaintiff's limitations to impairments in her left hip, which were contradicted by a June 2014 hip MRI. R. at 26, 180–81. Also, the ALJ relied on numerous office notes by Dr. Mangels reflecting the Plaintiff's intact strength, sensation, balance and gait.

Therefore, the Court finds that the ALJ assigned the appropriate weight to the opinion of Dr. Mangels.

### c. As to Dr. Pollack.

On August 4, 2014, Dr. Pollack, a family practitioner, consultatively examined the Plaintiff. Dr. Pollack diagnosed: back, right shoulder, and right elbow pain; CTS; psoriatic arthritis; hypothyroidism with fatigue; and hyperlipidemia. She opined that the Plaintiff had: a mild restriction in squatting, pushing, and pulling with the left arm, walking, standing, sitting, and climbing stairs; moderate restrictions in bending, lifting, and carrying with the left arm, and with the use of her hands; and moderate to marked restrictions in lifting, carrying, pushing, pulling, and reaching with the right arm. Dr. Pollack also opined that the Plaintiff should avoid heights, operating heavy machinery, and activities that require heavy exertion or present a fall risk. The ALJ afforded Dr. Pollack's opinion "some weight" because, while there was some consistency

with the overall record, the opinion was not entirely consistent with Dr. Pollack's own examination findings.

The Plaintiff argues that ALJ erred in that regard, because the medical record establishes that her pain and restricted range of motion caused her restrictions in the upper right extremity. The Court disagrees. Dr. Pollack's opinion that the Plaintiff had marked limitations in lifting with her right arm and moderate deficits with use of her right hand, R. at 234, contradicted her findings on examination that the Plaintiff had full strength and unimpaired sensation in her right upper extremity and no demonstrated problems with dexterity or grip. *Id.* at 233. Further, although the Plaintiff complained periodically of pain and/or functional limitations in her right hand, the record illustrates that she consistently had full strength and movement in her fingers bilaterally. *Id.* at 521–22, 533, 576–77, 581, 590–91, 596, 606, 628–29.

Also, the Plaintiff disagrees with the ALJ's assertion that her full strength and unimpaired sensation in her right arm, coupled with the lack of problems with dexterity and grip, undermine Dr. Pollack's finding of marked limitations in her right arm. In the Plaintiff's view, the inability to lift an object is a distinct limitation from limitations with fine manipulations of the object. First, Dr. Pollack did not just opine on the Plaintiff's ability to lift objects. She also opined on the Plaintiff's alleged "deficits with use of the right hand," to which dexterity and grip clearly relate. *Id.* at 27. Second, the strength and sensation in the Plaintiff's upper extremities directly relates to the Plaintiff's ability to lift objects—if she lacked those abilities it is unlikely that she could lift anything. Third, contrary to the Plaintiff's assertion, the record contains a litany of evidence pertinent to her ability to lift objects. She testified that she was limited only in reaching above her head or below her knees. *Id.* at 210–11. She drove an automobile and could pick up lightweight items. *Id.* at 208. And she had no difficulty using her left hand. *Id.* at 211.

Therefore, the Court finds that the ALJ assigned the appropriate weight to the opinion of Dr. Pollack.

### d. As to Dr. Golub.

Dr. Golub, a medical expert, testified at the hearing after reviewing the Plaintiff's file and hearing her testimony. Dr. Golub opined that the Plaintiff's impairments did not meet the criteria of the Listings; the Plaintiff could walk or stand for at least two hours and sit for six hours; in the right upper extremity, she would be limited in reaching overhead and lifting and carrying ten pounds frequently and 20 pounds occasionally; and that she should avoid unprotected heights and work where fine manipulation on the left was necessary. The ALJ afforded "great weight" to Dr. Golub's testimony because it was consistent with the overall evidence of record.

The Plaintiff objects to the weight afforded Dr. Golub's opinion on two grounds.

First, the Plaintiff notes that Dr. Golub was not an examining physician and, therefore, his opinion should carry less weight. However, the Second Circuit has held that the opinions of non-examining sources can override treating sources' opinions provided, as is the case here, that they are supported by substantial evidence in the record. *Diaz*, 59 F.3d at 313 n.5; *Netter v. Astrue*, 272 F. App'x 54, 55–56 (2d Cir. 2008) ("Under the applicable regulations, even 'nonexamining sources' may 'override treating sources' opinions, provided they are supported by evidence in the record.' (quoting *Schisler*, 3 F.3d at 568)). Here, the opinions of the treating physicians were either conclusory, inconsistent with their own treatment notes, and/or inconsistent with the overall record. In contrast, Dr. Golub's opinion comported with the other evidence in the record, which included a generally unremarkable x-ray of the Plaintiff's right shoulder post-surgery, R. at 236, and repeated and consistent findings of full strength and stability in her upper extremities. *Id.* at

233, 429, 435, 445, 450, 516, 521, 528, 533, 576, 590–91, 596, 601, 606, 616, 629. As a result, the ALJ properly elevated his opinion over those of the Plaintiff's treating sources.

Second, the Plaintiff argues that Dr. Golub did not hear all the testimony and – without articulating how – contends his opinion was compromised by the information that he did not hear. Although Dr. Golub stated he could not hear testimony at one point, the issue was addressed shortly thereafter. *Id.* at 42. Moreover, there is no indication that the testimony Dr. Golub missed materially influenced his opinion. The portion of the record cited by the Plaintiff encompass her general assertions about pain and the injections she received, information which Dr. Golub discussed in his overall assessment of her condition. *Id.* at 48–49.

Therefore, the Court finds that the ALJ assigned the appropriate weight to the opinion of Dr. Golub.

### 3. As to the Plaintiff's Activities of Daily Living.

The ALJ considered certain of the Plaintiff's activities of daily living in determining her RFC, including: statements from her function report and testimony that, due to pain, she needed assistance in certain activities; had problems reaching overhead and sitting for a long time; and could not walk more than 200 feet. The ALJ also considered the Plaintiff's statements that she could drive an automobile and do light cooking, cleaning, laundry, and shopping. The Plaintiff argues that the ALJ equated her ability to perform these activities with her capacity to perform full time, competitive work.

The Plaintiff is incorrect. The ALJ never cited the Plaintiff's ability to do housework or shop as definitive facts upon which the RFC rested. Rather, he looked at the totality of the record – including treatment notes, medical opinions, subjective statements and a medical expert – and then referenced those activities as part of his examination of the intensity, persistence, and limiting

effects of her symptoms. R. at 29. The ALJ thus properly analyzed the Plaintiff's statements in the context of the overall medical evidence and other evidence in the record. *See Mejia v. Barnhart*, 261 F. Supp. 2d 142, 146 (E.D.N.Y. 2003) ("The ALJ properly considered evidence . . . of plaintiff's ability to engage in daily activities such as twice daily preparing her own meals, regular church attendance, and independent travel to and from medical appointments by public transportation."); *Connard v. Barnhart*, No. 99-cv-8006, 2002 WL 1821640, at *5–6 (E.D.N.Y. Aug. 8, 2002) ("[Plaintiff's] statements regarding her ability to go shopping, take walks, perform household duties and travel on public transportation contradicted her complaints regarding the severity of her pain.").

Therefore, the Court finds the ALJ did not err in characterizing or considering the Plaintiff's activities of daily living.

### 4. As to the Plaintiff's Failure to Pursue Certain Treatments.

In considering the Plaintiff's symptoms, the ALJ noted that, despite her complaints, she did not undergo additional surgery for her right shoulder, nor did she pursue more than conservative care for her neck, back and hip. The ALJ was entitled to consider this information to the extent that it weighs against her allegations of totally disabling symptoms. *See Penfield v. Colvin*, 563 F. App'x 839, 840 (2d Cir. 2014) ("[W]hile Penfield testified that her constant pain prevented her from standing for more than five minutes without leaning against something or dressing herself without assistance, her treating physician consistently prescribed a 'conservative treatment' regimen"); *Netter*, 272 F. App'x at 56 (finding the district court properly relied on treating source's "conservative treatment regimen as additional evidence"); *Navan v. Astrue*, 303 F.App'x 18, 20 (2d Cir. 2008) ("[T]he ALJ appropriately relied on the near absence of any medical

records . . . to find that Navan's claims of total disability were undermined by his failure to seek regular treatment for his allegedly disabling condition.").

The Plaintiff argues that that the ALJ's consideration of treatment fails to comply with SSR 82-59. However, that policy applies only to individuals found disabled under the Act who refuse to seek "prescribed treatment." Although the Plaintiff has some functional limitations in her right shoulder, the ALJ incorporated those restrictions into her RFC and determined that she did not have a disabling impairment.

The Plaintiff also objects to the ALJ's consideration of the Plaintiff's treatment because the ALJ failed to provide an analysis about why the Plaintiff failed to seek such treatment. SSR 16-3p. The Court concurs with the Plaintiff that this was in error, but finds no reason to believe that further discussion on this point would have resulted in a change to the RFC finding in light of all the evidence previously discussed. *See Zabala v. Astrue*, 595 F. 3d 402, 410 (2d Cir. 2010) (holding that if the ALJ's further consideration would not have changed an ALJ's adverse determination, any error in failure to consider such evidence is harmless).

Therefore, the Court finds that the ALJ did not commit an error necessitating a remand in considering the Plaintiff's failure to pursue treatment.

## III. CONCLUSION.

For the reasons stated above, the Plaintiff's motion for judgment on the pleadings pursuant to Rule 12(c) is denied in its entirety, and the Defendant's motion for judgment on the pleadings dismissing the Complaint is granted in its entirety.

The Clerk of the Court is respectfully directed to close this case.

It is **SO ORDERED**:

Dated: Central Islip, New York

December 5, 2019

_/s/ Arthur D. Spatt_

ARTHUR D. SPATT

United States District Judge